### GREENLEY v. JANESVILLE MILLS.
#### No. 10786.

United States Court of Appeals
Seventh Circuit.
May 21, 1953.

R. J. Sutherland, Madison, Wis., Carl Greif, Independence, Iowa, for plaintiff-appellant.

Harry F. Knipp, Hiram M. Nowlan, Otto A. Oestreich, Janesville, Wis., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

His suit for breach of contract having resulted in judgment for defendant, plaintiff seeks reversal. The facts are not largely in dispute. Plaintiff is a dealer in agricultural products, including soy beans, in Iowa, and defendant, a processor in Wisconsin. In processing soy beans, two products result, meal and oil, each of which is edible as animal foods and, to a lesser degree, by human beings. The oil is also used in industry, including the manufacture of paint and soap.

On July 5, 1950 defendant, on one of its printed blanks, "confirmed" a purchase of from 18,000 to 20,000 bushels of beans damaged by burning, at $2.25 per bushel, f. o. b. Janesville, Wisconsin. The confirmation was signed by defendant. At the same time defendant issued a letter defining more clearly the terms of the contract, which was signed by both defendant and plaintiff. In the letter, it was agreed that defendant was to process the beans and add thereto 45¢ per bushel for its work and thereupon endeavor to sell the products at more than the total of the two costs, that is, at more than $2.70, and that any resulting profit should be divided, one-half going to each party. In case of loss that, too, was to be divided equally.

The agreement further provided that from 3000 to 5000 bushels were to be delivered to defendant for a "test run" before delivering the balance; that upon receipt of the initial shipment, defendant would process the beans therein and determine the quality of the meal and oil which could be produced from the same. Defendant agreed to submit samples to a chemist for analysis. It was stipulated that if the "test run" is "not acceptable to the trade" plaintiff should be notified in order that "a decision might be arrived at as to what future action would be to (the parties') mutual benefit."

Plaintiff promptly delivered to defendant 3530 bushels of burned soy beans for which the latter paid him $2.25 per bushel. Immediately following, the "test run" was made, and on August 7, 1950, defendant advised plaintiff that it had put forth every effort to sell the resulting products, that it had been unable to do so, that because some of the beans were burned quite badly the oil and meal were "unacceptable to the trade." To this plaintiff protested, saying that he thought he could secure a party who would make a bid. On August 11, defendant wrote further that "until we can work out something which would be agreeable to both of us", it was not in position to accept delivery of additional beans of that character. Plaintiff thereafter sold the beans at a loss and brought suit to recover for breach of contract.

Substantially the court found the facts to be as related. It found also that defendant had submitted samples of the products to recognized chemists in the field; · that the oil was not acceptable to the trade either for the manufacture of soap or paint or as edible oil and could be disposed of only as core oil used in iron castings. It found also that the meal was not acceptable for livestock feed and could not be disposed of to the trade, and entered judgment dismissing the complaint.

■ Plaintiff contends that the contract was an outright contract of sale and that defendant should be held to account for damages for its breach. It is to be observed, however, as we have commented, that a "test run" was to be made, that the samples were to be submitted to chemists to determine whether the damaged bean products were acceptable to the trade and that, in case the test was unsatisfactory, the parties would then determine what was best to be done to protect their interests. Recognizing the uncertainty of this contract, plaintiff argues that we must look upon it as a joint venture whereby the parties were to profit or to lose in equal proportions. But we can apprehend of no reason why a joint venture agreement should lend itself to any different construction than that accorded any other contract.

■ We are bound, of course, by the law of Wisconsin. In Ratcliff v. Aspros, 254 Wis. 126, 35 N.W.2d 217 the Supreme Court of Wisconsin had before it an agreement between landlord and tenant to renew the lease at "terms to be mutually agreed upon between the parties." The court held the contract void for uncertainty, saying "In the instant case the provision for renewal is too indefinite and uncertain to be enforcible and it is void. In the lease before us no procedure is outlined, no method is indicated, and no standard is set up for determining the rental and terms of a new lease. No resort to the settled rules for construction of the language of the covenant to renew can give meaning or substance to it. The courts cannot be called upon to write contracts or to supply omissions." Later in Leider v. Schmidt, 260 Wis. 273, 50 N.W. 2d 233, a similar contract was considered, wherein the lessees were to have the privilege of renewing on terms and conditions "to be agreed upon at the expiration of the * * * term". The parties were not able to agree upon terms and the tenant, alleging that the landlord had refused to negotiate further, brought suit. Concerning the Ratcliff case, the court observed that the plaintiff had attempted to distinguish the case at bar from Ratcliff but that the court was of the belief that there was no distinction in law, and that cases from ·other jurisdictions could not control, for the law of Wisconsin was fixed by Ratcliff v. Aspros, supra.

■ In view of this state of the Wisconsin law, we see no escape from the conclusion that this contract, like all such, is void

for uncertainty and that when the products were found unacceptable to the trade, as the court found, the contract came to an end. To hold otherwise would be to impose upon the parties a rule of law not justified by the Supreme Court of Wisconsin.

Plaintiff argues that, inasmuch as defendant was able to sell the products for use in casting metals, the finding of the court that they were not acceptable to the trade lacks support in evidence. We think these words must be used in the light of what the parties understood to be the normal trade, as shown by the record. It is clear that the normal distribution of soy bean meal and oil, is made to millers who make products for human consumption or feed for livestock and to soap and paint manufacturers who employ the oil in producing those two products. Here they were sold to be used only in the casting of metal. It seems clear to us that this is an abnormal use,—abnormal trade. Consequently the fact that defendant was forced to dispose of the products at a lower price in an abnormal course of trade does not, it seems to us, impinge in any way upon the soundness of the court's finding of fact that the products were not acceptable to the trade. We find no justification in the evidence for holding that the finding was clearly erroneous. The judgment is

Affirmed.